Your argument is 15-1017, Prolitec v. ScentAir Technologies. Mr. Arner, whenever you're ready. I reserve three minutes for rebuttal time. Thank you. May it please the board. The board has made several legal errors that require reversal. First, the board improperly used the 068 patent itself as a roadmap to support a combination of the Lippizant and Privas references. Second, the board's reason to combine Lippizant and Privas rests on a fact-finding that is directly contradicted by fact-finding in a different part of the board's decision. Third, the board's ultimate conclusion of obviousness rests on a key fact-finding that has no citation in the opinion, no support in the record, and is directly contradicted by the Lippizant reference itself. On the second point you were making, it seems to me that even if that's correct, that there was a contradiction in the board's opinion, it doesn't seem to me that much of a leap to say that these two pieces of prior art are clearly analogous art and can be combined. Well, so the directly contradictory fact-findings actually go to the specific teaching of the Lippizant reference in the board's explanation of its motivation to combine. And I would just point out to you that this is a legal error because the reasons to combine must be clear and particular. What's the inconsistency? So they're interpreting the same statement in Lippizant. Where is it? Show us. So if you look at A17 and A21 are the places where there's inconsistency. There's just one sentence in Lippizant which involves the use of small drops. And the sentence in the reference says means of diffusing very small droplets in high numbers are well suited to the volume of residential rooms and meeting rooms typically containing air volumes of between 30 and 100 cubic meters. So if you look at A17, the board said of this statement near the top of the page, this statement does not disclose that the device of Lippizant may be used in 30 to 100 cubic meter rooms. But then if you look at A21, which is the board's explanation of reasons to combine the two references underpinning its entire legal conclusion, in the middle of that first paragraph on A21, the board finds, we find that Lippizant discloses treating rooms of varying volumes, at least ranging between 30 and 100 cubic meters. And given the requirement that, the legal requirement that the reasons to combine be clear in particular, particularly given the deferential standard of review that is accorded the board's decision, this contradictory finding undermines the board's reasons to combine. Did you erase this issue of your brief? Yes, we did. Where is it? So I point you to blue. Forgive me. Well, you can get it from your little bottle. Yes, it's... Don't worry about it. I will get you the page in my rebuttal. It is very clearly explained, the contradiction. I'm sorry, so if you look at the red brief, 7 to 8. The red brief? Red brief, at 7 to 8, and it refers back to the earlier papers. Well, I was asking where is your brief? Oh, I'm sorry, it's the third high brief, gray brief, I'm sorry. If you look at the gray brief, it's 7 and 8. We didn't erase it in the opening. We did, we erased that. Never mind, just go ahead. Thank you. Blue brief, 15. I'm sorry. Notwithstanding the contradiction, it's clear, is it not, that LaPazant expresses a desire to treat news of varying volume. And if that's the case, notwithstanding the contradiction in what the board said, why isn't that enough support to combine the references? Because LaPazant does not disclose the primary teaching for which the board relies upon, relies on it for, which is... No, but I'm saying notwithstanding whether there was an error in what the board did, why can't we look at the references and say... Sure. There's a sufficient disclosure here to satisfy the motivation to combine. Okay, so... Pretty reasonable to me. So, leaving aside what the board's reliance... So, if you were to find that LaPazant discloses a desire to treat news of that volume. Right. Even if that is the case, LaPazant does not disclose multiple control schemes that can be selected by the user that dictate an air flow and a frequency. That is what's required by the plain language and by the board's instruction. Why does it disclose that? And that would still be missing from LaPazant. Why is that missing from LaPazant? So, LaPazant... You're saying LaPazant doesn't disclose a plurality of control schemes? No, it does not. And the mistake comes... I'll point you to a couple places in the board's decision where that mistake is clear. At A15, the board concludes that LaPazant permits the inclusion of multiple pre-established programs on the device, although the user is limited to selecting one program at a time. That's the board's key misunderstanding. That conclusion is unsupport... When I talk, you don't... Yes, of course. Okay, thank you. LaPazant's diffusion device controls nebulization units 4A, 4B, and 4C through programming chosen by the user or by pre-established programs of various sequences, specifying flow rate sequence and so on. LaPazant's application examples within the specification describe five applications of the patent. How is that not a plurality of schemes? Because the patent actually... The reference actually says those different examples, which the board mistakenly referred to as modes of operation of the device at A11. The patent specifically says those examples are different devices. What LaPazant actually describes is different types of devices that you can construct using the components that are described in LaPazant. So when the board refers to it as different modes of operation, that's incorrect. That's not what the reference says. The reference specifically says that the examples are different devices. It says that some of the components that you pointed out would not be needed in all of the devices, that in some of the devices, some of the control schemes would be pointless even. The various sequences language that the board looked at and that you just mentioned... Some of the control schemes would be pointless. That's what the reference said, in some devices, because it describes... So that means there's more than one scheme, right? Some of the components. No, not some of the schemes. I'm sorry if I misspoke. It's exactly what you said. Okay, I misspoke. Some of the components may be pointless. What the reference explains is that in a device that is built according to the reference, there can be multiple diffusion means. There can be multiple tanks of liquid. And it operates, it's programmable because it operates by a program that dictates when those diffusion means operate. So the sequence might be spray odor 1, then spray odor 2, then spray odor 1. Or it might be spray and then pause and then spray. That's the type of sequence that the reference is talking about. That's the various sequence. Even if that is a control scheme, it is not what is required in the board's claim construction because the control, if that is a control scheme, the patent says it has to be programmed by the user. The user would still have to figure out what those timing and sequences are and program them. I agree with what the board found that the user can program those sequences, but they would have to be selecting and programming the specific sequences, whereas the claim requires that a control scheme specifies both the flow rate and the timing of operation and that that control scheme can be selected by the user. And that's really the key to the invention here is that by selecting that one control scheme, all of the parameters are determined for the user. Really? I guess I'm not necessarily following this and maybe I'm unclear on the terminology, but I thought the prosecution history reflected that the novelty of this invention was not having multiple control schemes, but it was this so-called Venturi system. Well, Venturi has been around for centuries. That's clear from the record. And it's really the combination of the Venturi together with the control scheme together with the volume-based selection. But what the patent is really talking about is simplifying life for the user so that when the user knows I'm going to put this device in a room of a certain volume, a big meeting room versus a smaller meeting room, I just set the volume level and the device had pre-programmed, had all of the parameters for how frequently to blow the fan and how frequently to stop. So what was not in the prior art, in your view, that's novel about your invention? So what's not there is those different schemes that the user can simply select between, the schemes that set both the flow rate and the timing, as the board's construction requires that the control schemes specify those things. Isn't that pretty obvious? I mean, it's an analogous art, treadmills, alarm clocks, and various things. I mean, this concept doesn't seem to be something that one has not been using for decades and decades and decades. Well, in response to that kind of an argument, the board went to the patent itself and sent air even, urged the court to do the same. The references here, one teaches making odor peaks, looked as on as about odor peaks so that the user is surprised, woken up. Whereas Privas talks about keeping a constant level, even if there's an air conditioning blowing, it does the math to figure out how to keep a constant level. Those are different purposes. Well, that doesn't seem to respond to the notion that different control schemes are sort of common. Well, but that's not what the different sequences is what Le Pizant describes, but they have to be programmed by the user. And the piece that's not common and not shown in any of the art is that there are multiple of those schemes that the user can select between that will specify both the flow rate and the timing for the user. So that unlike in Le Pizant, the user doesn't have to determine those things and program them into the machine. That it's a selectable choice for the user. And that's novel. It is. Certainly the board made several legal errors here and there's not a single thing in the board's decision to support its finding, that key finding, the fact that there can be multiple programs on that single device. They mistakenly think that it's a device that you can change the programming and make it into one type of device or another. But that's not the case. The reference is clear that it's different devices. It's describing a whole bunch of different devices that can be made. And those various sequences are simply the ons and offs of the fan, which the user can program, but in the invention, that's not the case. In the claims that's construed by the board, the control scheme has to specify those things. That's the great thing about the control scheme being there for the user. We're into your battle time. Why don't we take the other side? Thank you. Thank you. Mr. Pond. May it please the Court. Joshua Pond for Appellee Sent Air. This morning in his briefs, Your Honors, appellant has presented a routine obviousness appeal. Yeah, but they do identify, whether you can say errors, inconsistencies. There are some problems with the board's opinion. So how do we get by those to reach, to affirm them? Is it with our own insight into common sense? And how? Your Honor, let me try to bring some perspective to the apparent inconsistencies that appellant presents and show that substantial evidence does indeed support the outcome of the board and should be affirmed. Let's talk first about the language that my friend brought up first, between pages A-17 and A-21 of the final written decision. This is related to L'Habitant's disclosure of treating rooms of various volumes ranging from 30 to 100 cubic meters. Now, appellant has presented a contradiction, or really perhaps there's a tension, because these two different sections address two different arguments. At page A-17, the board was addressing a single reference obviousness argument related to L'Habitant alone. As a single reference. The board found that the device of Lake Nassant is not disclosed as treating various rooms of 30 to 100 cubic meters. We disagree, however, that is the conclusion at A-17. If you turn to page A-21, this is addressing the double, the two reference obviousness approach for volume-based control of the combination between Priebus and Lake Nassant. There, the board clearly explained that while they previously found this passage from Lake Nassant did not disclose the device of Lake Nassant treating rooms of 30 to 100 cubic meters, therefore not a single reference obviousness, it did indeed contemplate treating rooms of various volumes, therefore being one of the three reasons that one of ordinary skill would look to combine Lake Nassant with another reference. Where does Lake Nassant discuss this? What page of the record do I look to to see what Lake Nassant said about this? Yes, Your Honor. Let's see. It's outlined in our brief. If you look at page 5 in your brief, you cite Lake Nassant 1189. Your patent is in the appendix 1180-something, right? Yes, Your Honor. It's on page 5 of the red brief. And so the cite is to 1189. Yes, it's page A1189 of the joint appendix at column 10, lines 8 through 10, Your Honor. That's the disclosure of Lake Nassant. Now, again, this is just one of the three reasons that one of ordinary skill would combine Lake Nassant and Priebus. The other being the common knowledge of the influence of volume on liquid diffusion, and this is what Chief Judge Post alluded to earlier. Dr. Garris, appellee's expert, introduced the notion of cooking smells. A small room with cooking smells can be stronger. A large room can be weaker. So, again, that, I hope, reconciles those two passages. I'll turn next to the second item, that appellant's counsel address, which is control schemes. And here, appellant has offered a series of theories in an effort to place the control schemes of the 068 patent somehow beyond those control schemes disclosed in Lake Nassant. And the problem has been that appellant has presented the numerous control schemes of Lake Nassant as if they're somehow divided from one another. This morning, appellant's counsel, my friend, said, referred to it as different devices. There is no such disclosure in Lake Nassant. In fact, Lake Nassant does have a number of embodiments. However, those embodiments are directed to the means of diffusion. At the core of our case is the Venturi diffusion of liquid. Another example is the diffusion of liquid by the use of sound waves. Those are a number of embodiments. However, Lake Nassant is clear at page A1190 of the record, between lines 1115 and 1123, that when it comes to control, Lake Nassant is explicit that its disclosure is applicable to all embodiments. And appellant has not presented any evidence to the contrary somehow dividing the numerous control schemes. In their reply brief at page 2, they just say it makes little sense. That's the closest they come. Indeed, Lake Nassant's disclosure of control schemes is complete. The starting point for the board was Lake Nassant's discussion of a user being able to choose its programming. And this is at the final written decision at A14. The way Lake Nassant enabled the choice of a program is the central processing unit, 50, including a random access memory. And this is a good quote here, with parameter setup and user programming data for the performance of various sequences of diffusion. And that's at page A1190. And Lake Nassant then goes on to introduce its five examples that appellant counsel focused on during her argument. And it's very important to take a look at the language that prefaces those five examples. And that again is, let's see, it's on, this is A1191 at column 13, lines 25 through 35. Here, it notes that in the following examples, the described functions and cycles of examples 1 through 5 are obtained by programming managed at CPU50. The CPU that was referred to earlier, again you have five examples, a single CPU. The appellant expert, Dr. Shedd, has admitted that example 5 is a control scheme and one need turn no further than examples 1, 2, 3, and 4. And the general discussion of control schemes defines a plurality of control schemes. In sum, on a plurality of control schemes, your honors, there's no division between the numerous disclosures of Lake Nassant. And there's a number of programs that are choosable by the user. I'd like to turn just briefly to volume-based control and the disclosure within Lake Nassant. I want to clarify something that appellant counsel discussed this morning. Appellant seeks to distinguish previs on the volume-based control element by turning back to the control schemes element. As Judge Wallach noted, it is Lake Nassant that discloses control schemes. And that was found by the board below. That's what's sent here. The appellee has contended all along. Indeed, previs's table of lookup, excuse me, the lookup table of set point values is akin to the exemplary but unclaimed table of 068's figure 4, such that Aaron and the board discussed control schemes in the context of previs. This board need not find that control schemes are in Lake Nassant. I guess the final thing I'll just present is regarding the purposes of Lake Nassant and previs. Again, appellant counsel touched on this this morning. Appellant has long advanced the theory that the 068 patent and Lake Nassant vary scent cycles, whereas previs maintains a constant scent cycle. Below, they presented this tension as somehow supporting a contention that the previs is not reasonably pertinent to the problem of the 068 and therefore not analogous art. The board disagreed below and found that the 068 patent indeed both cycles and maintains constant odor. And here they cited claim 11 of the 068 patent, which claims constant odor. Under in rebusio, that is the proper framework of the analysis. When determining analogous art, one looks to compare the purposes of the prior art with the target patent. Now here on appeal, appellant has shifted its argument. It's still a purpose-based argument. However, they're discussing irreconcilable purposes of Lake Nassant and previs. And here again, record evidence supports that one of ordinary skill would not find varying odor and maintaining odor to be irreconcilable. Most importantly, Dr. Garris, the appellee's scent expert, testified twice at pages A1293 and A1829 that to vary and maintain odor concentration is like two sides of the same coin. Or to correct appellant's metaphor, land can indeed be both mountainous and flat at various points. Thus, record evidence supports that a person of ordinary skill would not find Lake Nassant and previs irreconcilable. And appellant has offered no evidence of the contrary. And I would just note, as a final point, that this purpose-based inquiry is indeed a factual inquiry under Graham's scope and content of the prior art. And that case, this court has held at Ingrid Moutet, 686 F. 3rd, 1322. Therefore, subject to substantial evidence deference. Unless there's any further questions, I'll cede the rest of my time and just note that, in conclusion, the board's factual determinations are indeed supported by substantial evidence and the challenged claims of the 068 would be obvious to one of ordinary skill in New York. We therefore ask that you affirm this final written decision of the PAT trial and appeal board. Thank you. Thank you. Thank you. I'd like to first point out where the lieutenant reference specifically says that those examples mentioned by my colleague are devices, multiple devices, not one device with multiple modes. At A1191, specifically, again, as my colleague pointed out, pointing to the examples, introducing them, more than once the patent says, the reference says, the use of the devices contracted according to the invention will now be described by means of examples. And later, the multiple diffusers and programming here provide access to a variety of fields of uses of programmed diffusion devices, as will appear in the non-limited examples given below. That's at A1191 in column 13 from about line 15 down to 35. The patent specifically says that they are different devices. Wait, where does it say that? It refers to the... It doesn't say different devices. Well, but they're multiple devices, excuse me, multiple devices, not multiple modes of a single device. Where's the reference to multiple devices? I was at line 19 in column 13. It says the devices contracted according to this invention, which will now be described by means of examples. And then about line 33, the various programmed diffusion devices, as will appear in the non-limited examples given below. I don't see if that says that these are necessarily separate devices. Well, and the point that the appellant made... Especially given the preface to that, which is the multiple diffusers and the programming of combinations forming varied sequences. For a single device is what the reference says. Those sequences are turning the fan on and off in one of the devices, whichever one you happen to be talking about. I see my time is just about out. I'd like to make one final point regarding another legal error that was made by the board, which is the improper use of the patent itself to find its motivation to combine. In particular, the board found... The board compared the PREVAS reference and the 068 patent and found that they have significant structural similarities. This is at A23. These structural and functional similarities would have led one of ordinary skill in the art working in the field of atomizing devices, such as those of the 068 patent, to consider similar devices, such as the fumigator of PREVAS. Using the patent itself as a roadmap to combining the prior art is improper and a legal error. The board, likewise, erred by comparing the problem addressed in PREVAS, a constant scent level, with the problem in the patent itself, rather than treating the obviousness inquiry properly, which is at the time of the invention, not using the patent to teach against itself, which is a legal error that should be reversed. Thank you.